Elijah & Shirley C. WHITFIELD, Plaintiffs-Appellees-Cross Appellants,

v.

TERMPLAN, INC., Bolton, Defendant-Appellant-Cross Appellee.

No. 80–7249.

United States Court of Appeals,
Fifth Circuit.
Unit B

July 23, 1981.
Rehearing and Rehearing En Banc
Denied Sept. 11, 1981.

Richard V. Karlberg, Jr., Atlanta, Ga., for defendant-appellant-cross appellee.

Bowen, Derrickson, Goldberg & West, Ralph Goldberg, Atlanta, Ga., for plaintiffs-appellees-cross appellants.

Before JONES, TJOFLAT and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

On May 30, 1978, the appellant Termplan, Inc., Bolton (lender) and the appellees-cross appellants, Elijah and Shirley Whitfield (borrowers) entered into a consumer credit transaction. On September 30, 1978, the borrowers filed this action alleging that the loan contract violated various provisions of the Truth-In-Lending Act, 15 U.S.C.A. § 1601 *et seq.* and Regulation Z, 12 C.F.R. § 226.1 *et seq.* The lender answered, denied liability and counterclaimed for the balance due on the loan contract. The borrowers replied that the contract violated the Georgia Industrial Loan Act. Ga.Code Ann. Chap. 25–3, and was therefore void and unenforceable. The district court held that the inclusion of a provision for post-maturity interest was a default or delinquency

charge which was required to be disclosed under the Truth-In-Lending Act and had not been disclosed. The court also held that the contract violated the Georgia Industrial Loan Act and dismissed the lender's counterclaim. The lender filed a notice of appeal. The borrowers, dissatisfied with their award of attorney's fees, filed a cross-appeal. We reverse and remand.

## I. MUST THE POST–MATURITY INTEREST CLAUSE BE DISCLOSED UNDER REGULATION Z, 12 C.F.R. § 226.8(b)(4)?

Regulation Z, 12 C.F.R. § 226.8(b)(4) requires the disclosure of "[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments." The contract involved in this case contained the following provision under the heading, "State disclosures that are inconsistent with the federal Truth-In-Lending Act:"

> For value received . . . The undersigned agrees to pay interest after the scheduled or accelerated maturity hereof at the rate of 8 percent per annum. . . .

The district court held that this provision constituted a charge similar to a default or a delinquency charge, and that it must be disclosed in the federal or Truth-In-Lending disclosures. The court based its conclusion on the fact that, had the contract been silent as to post-maturity interest, the lender would have been entitled to collect only seven percent under Georgia law. *See* Ga. Code Ann. § 57–101 (Supp.1981). The court reasoned that the contract effectively reserved to the lender an additional one percent of post-maturity interest, and that the one percent constituted the delinquency "charge."

■ We note, however, that the eight percent post-maturity interest rate was the same as the stated periodic rate under the contract itself, which the lender would have

been lawfully entitled to collect in the absence of a default. This court has never faced the question of whether a post-maturity interest charge equal in amount to the interest rate of the loan constitutes a "default, delinquency, or similar charg[e]." Recently, the Supreme Court has defined the term "delinquency charge" as used in the Truth-In-Lending Act "as specific penalty sums," and as "the compensation a creditor receives . . . for the debtor's delay in making timely installment payments." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 561, 100 S.Ct. 790, 795, 63 L.Ed.2d 22 (1980). We do not believe that a post-maturity interest rate on the outstanding balance constitutes a penalty or compensation for delay when that rate is the same as the interest rate of the loan itself.[1]

Our conclusion finds support in a Federal Reserve Board Official Staff Interpretation of Regulation Z, 12 C.F.R. § 226.8(b)(4):

> You also ask whether a creditor must disclose that, after the maturity date of a simple interest loan contract, interest may or will accrue on any principal balance that remains unpaid.

> It is the staff's opinion that as to simple interest loans, *such continued accrual of interest need not be disclosed if the periodic rate applicable after maturity is the same as the stated periodic rate under the loan contract,* or if the rate permitted by statute after the loan maturity rate is lower than the stated rate. Where the interest on the unpaid balance accrues at a higher rate after the maturity date, however, staff believes disclosure is required by § 226.8(b)(4).

FRB Official Staff Interpretation No. FC–0083 (June 20, 1977), reprinted in CCH, Consumer Credit Guide, Transfer Binder ¶ 31,611 (emphasis added).

Our conclusion also finds support by analogy from *McDaniel v. Fulton National Bank of Atlanta*, 571 F.2d 948 (5th Cir.

---

1. *Compare Franklin v. Community Federal Savings & Loan Assn.*, 629 F.2d 514 (8th Cir. 1980), where the court held that an *increase* in the interest rate during a period of delinquency constituted a "default, delinquency or similar charg[e]."

1978) *clarified,* 576 F.2d 1156 (5th Cir. 1978) (en banc) and *Ford Motor Credit Corp. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), both dealing with the issue of whether a creditor's practice concerning rebate of unearned interest in the event of acceleration pursuant to default constitutes a delinquency charge. In *McDaniel,* this court said:

> Nor need an additional disclosure of rebate provisions of unearned interest in the event of default be made if these are the same as disclosed rebate provisions in the event of voluntary prepayment. But if the creditor possesses under his contract the right to retain *more* unearned interest in the event of accelerated payment pursuant to default than in that of voluntary prepayment . . . then the existence of that right in him must be disclosed.

576 F.2d at 1157 (emphasis added). In *Milhollin,* the Supreme Court said:

> But so long as the creditor's rebate practice under acceleration is identical to its policy with respect to voluntary prepayments, *separate* disclosure of the acceleration policy does not seem obligatory under a literal reading of the regulation.

444 U.S. at 562, 100 S.Ct. at 795.

As the Supreme Court declared, "[u]nless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. at 565, 100 S.Ct. at 797. We believe that the staff's approach to this issue is eminently rational. Indeed, we believe it would be unreasonable to penalize the lender for failing to disclose the fact that he would charge the same interest rate for the use of his money after maturity as he did during the life of the loan. We hold that a lender is not required to disclose the fact that post-maturity interest will be charged where the rate is the same as the stated contract rate of interest.[2] We therefore reverse the decision of the district court and remand for further proceedings.[3]

## II. WAS THE LOAN CONTRACT VOID AND UNENFORCEABLE UNDER THE GEORGIA INDUSTRIAL LOAN ACT?

By counterclaim, the lender sought to recover the outstanding balance due on the note. The borrowers filed a defense to the counterclaim alleging that the contract refinanced a prior contract which was void under Georgia's Industrial Loan Act ("ILA"), Ga.Code Ann. Chap. 25–3 (1981), and therefore was itself void. The contract at issue here was executed on May 30, 1978, but it included a refinancing of the balance of a prior loan transaction dated October

---

**2.** The borrowers rely upon this court's decision in *Smith v. Chapman,* 614 F.2d 968 (5th Cir. 1980), for the proposition that the post-maturity interest rate must be disclosed as a delinquency or default charge. We do not believe that *Smith v. Chapman* addressed this issue. In *Smith* the post-maturity interest was specifically treated on the creditor's documents as a delinquency charge. The contract provided:

> The Seller, at its option, shall collect a delinquency charge on each installment in default . . . in an amount not to exceed 5% of each installment or $5 whichever is less, or, in lieu thereof, interest after maturity on each installment, not to exceed the highest lawful contract rate.

There is no indication that the *Smith* lender argued, either in the district court or in this court, that its post-maturity interest was not a delinquency charge; and the lender's own treatment of it may have precluded such an argument. Furthermore, this court's opinion in *Smith* held only that the disclosure there was not sufficiently clear and definite. The lender had disclosed on the front page only that the post-maturity interest would not exceed the "highest lawful contract rate," and only by reading the other portions of the contract could one ascertain that the highest lawful contract rate was ten percent. There is some language in the district court's opinion in *Smith v. Chapman,* 436 F.Supp. 58, 63 (W.D.Tex.1977), which lends support to the borrowers' position in this case; however, this court did not adopt the district court's reasoning.

**3.** One alleged Truth-In-Lending violation remains to be considered by the district court, *i. e.,* whether the disclosure statement failed to disclose the limitation on security interests in accessions.

26, 1977. On appeal, the parties agree that the first loan contract was illegal, and thus void, as tested by the interpretation of the ILA in *Consolidated Credit Corp. of Athens v. Peppers*, 144 Ga.App. 401, 240 S.E.2d 922 (1977).[4] The parties also agreed that the second contract did not violate the ILA on its face. The borrowers argue, however, that the second loan which refinanced a prior tainted loan was itself void because of illegal consideration. We do not agree.

■ The Georgia Court of Appeals decision in *Peppers* was rendered on December 5, 1977, more than one month after the first loan contract was executed. During the pendency of this appeal, the Georgia Court of Appeals decided to give its *Peppers* decision prospective application only. *FinanceAmerica Corp. v. Drake*, 154 Ga.App. 811, 270 S.E.2d 449 (1980). Therefore, the 1977 loan was not void and when that loan was renewed there was no taint.

Our conclusion finds further support in the 1978 amendment to the ILA. In 1978, the Georgia General Assembly amended Ga. Code Ann. § 25–9903 to include the following proviso:

If a contract is made in good faith in conformity with an interpretation of Chap. 25–3 by the appellate courts of this State or in a rule or regulation officially promulgated by the commissioner after public hearings, no provision in this section imposing any penalty shall apply, notwithstanding that after such contract is made, such rule or regulation is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

Ga.Code Ann. § 25–9903 (1981). The amendment was apparently a response to the court of appeals decision in *Peppers*. During the pendency of this appeal, the Georgia Supreme Court decided to give the amendment retroactive application. *Southern Discount Company of Georgia v. Ector*, 246 Ga. 30, 268 S.E.2d 621 (1980). The retroactive application of the 1978 amendment has the same effect in this instance as giving the *Peppers* case prospective application only. The affidavit of Al Field, the lender's branch manager, states that the lender relied upon the pre-*Peppers* decisions in calculating the loan fee. There is no evidence which would demonstrate a lack of good faith. Therefore, we reverse the district court's grant of summary judgment which dismissed the lender's counterclaim for the balance due; we remand to the district court for further proceedings.[5]

Accordingly, the judgment of the district court is REVERSED AND REMANDED.

---

4. *Peppers* held that a loan contract was void and unenforceable where the interest charge was included in the computational base used to calculate the loan fee. *Peppers* represented a departure from prior cases which had implicitly or explicitly approved this practice.

5. In response to the counterclaim, the borrowers also argued that the lender was estopped from recovering the balance due on the loan contract because it had issued a termination statement indicating that it no longer claimed a security interest in the property. *See* Ga.Code Ann. § 109A–9–404. The magistrate stated that while there may be merit to the argument, he based his decision upon a finding that the loan contract violated the ILA. The district court adopted the magistrate's report. In view of our holding that the contract did not violate the ILA, we remand to the district court for a determination on the question of estoppel and other defenses, if any, to the counterclaim which the borrower has properly preserved.

Since we have reversed the district court's finding of a Truth-In-Lending violation, we do not address the borrowers' allegations that the award of attorney's fees was insufficient or the lender's claim that each borrower should not recover separate damages under the Act.