John ENRIGHT and Patricia
Enright, Plaintiffs,

v.

BENEFICIAL FINANCE COMPANY OF
NEW YORK, INC., Defendant.

No. 78–CV–351.

United States District Court,
N. D. New York.

Dec. 17, 1981.

Greater Upstate Law Project, Rochester, for plaintiffs; K. Wade Eaton, Rochester, of counsel.

Hill & Cook, P. C., Syracuse, for defendant; George V. Cook, Syracuse, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Plaintiffs John and Patricia Enright brought this action against Beneficial Finance Company of New York, Inc. ("Beneficial") for declaratory relief and to recover statutory penalties for defendant's alleged violations of the Truth in Lending Act, as amended, 15 U.S.C. § 1601 *et seq.* ("TILA"), regulations promulgated under TILA, 12 C.F.R. Part 226 (Regulation Z) and section 358 of the New York Banking Law (McKinney's 1971). Subject matter jurisdiction over the TILA claims exists under 15 U.S.C. § 1640(e); jurisdiction over plaintiffs' state law claims depends on the exercise of pendent jurisdiction.

The matter is before the Court on renewed cross-motions for summary judgment. The issues concern the proper treatment of interest imposed on the unpaid balance of a precomputed interest loan following default and acceleration. Plaintiffs contend that the imposition of post-default interest constitutes a default or delinquency charge which must be disclosed under TILA and Regulation Z, 12 C.F.R. § 226.8(b)(4). Defendant, on the other hand, asserts that so long as the post-default interest rate does not exceed the rate charged before default, there is no default or delinquency charge and therefore no duty to disclose under TILA or Regulation Z.

## I. BACKGROUND AND PRIOR PROCEEDINGS

On July 28, 1977, plaintiffs entered into a loan agreement with Beneficial. Plaintiffs' obligation was evidenced by a Note which provided that plaintiffs were to repay the principal and a precomputed interest charge in regular monthly installments. The first paragraph of the Note describes the interest charge as follows:

> The agreed monthly rate of interest is 2½ % per month on that part of the unpaid principal balance of the loan not in excess of $100.00, 2% per month on that portion of the unpaid principal balance of said loan in excess of $100.00 but not in excess of $300.00, and 1½% per month on that portion of the unpaid balance in excess of $300.00 but not in excess of $900.00, and 1¼% per month on any remainder of such unpaid principal balance. If this note is not paid at the Final Due Date or the deferred final due date, if any, the unpaid balance of the Principal Amount of Loan shall bear interest thereafter at said agreed monthly rate.

The Note goes on to describe the installment amounts, the predetermined default charge applicable in the event of a temporary default on a particular installment, the borrowers' option of prepayment and the rebate provisions, and the lender's option of deferring unpaid installments on which no default charge has been collected. The Note then describes the lender's right to accelerate payment of the entire debt upon the borrowers' default and provides that, after crediting the unpaid balance of the total amount of the Note in accordance with the rebate provisions governing voluntary prepayment, "interest on the unpaid balance of the Principal Amount of Loan shall be payable at the aforementioned agreed rate of interest."

This loan transaction was covered by both the federal Truth in Lending Act and Article IX of the New York Banking Law. As required by those laws, Beneficial also provided plaintiffs with a Statement of Disclosure which contained the TILA and Regulation Z disclosures on one side and the state-mandated disclosures on the reverse side. The front side of the Statement of Disclosure contains numerous specific disclosures, including: "prior account" information; the first and final due dates of the monthly installments; the number of monthly installments; the amount of the first and remaining installments; the amounts attributable to insurance and filing fees; the AMOUNT FINANCED ($2500.00); the FINANCE CHARGE ($1048.15); the TOTAL OF PAYMENTS ($3548.15); the ANNUAL PERCENTAGE RATE (18.06%); the amount delivered to plaintiffs; a description of the security interest; the amount of the Default Charge [1] ($0.87), and a notation pertaining to execution of a wage assignment. The TILA disclosure statement also contains paragraphs explaining the default charge (see note "1"), the deferment charge and the lender's refund policy in the event of prepayment. The last of these descriptive paragraphs, which occupies center stage in this litigation, provides as follows:

---

1. The first paragraph appearing immediately below the specific disclosures identified in the text, provides a description of the $0.87 default charge:

> DEFAULT CHARGE: The Lender may collect the Default Charge shown above if more than one half of any scheduled installment is not paid on the fifth day after its due date. Such Default Charge is equal to refund that would be required for prepayment in full one month prior to the Final Due Date.

ACCELERATION: Default in the payment of the full amount of the monthly installment on said loan, at the option of the Lender, shall cause the unpaid balance thereof to become at once due and payable. The Lender shall credit to the unpaid balance of the Total of Payments an amount equivalent to what would be the refund of the Finance Charge, calculated on the same basis as that set forth under REFUNDS, as if the loan were prepaid in full on the date of acceleration and, thereafter, interest on the unpaid balance of the Amount Financed shall be payable at the agreed rate of interest.

On the reverse side of the disclosure form, immediately under the heading "STATEMENT OF LOAN," are five short paragraphs that explain the "agreed monthly rate of interest" on the loan and inform the borrower that this interest schedule shall apply to any unpaid balance remaining after the maturity date or in the event of default and acceleration of the entire loan amount. Following these State-mandated disclosures, there appears an extract from section 352 of the New York Banking Law which authorizes the interest schedule set out in the Note and the STATEMENT OF LOAN, and further provides that where the loan contract requires repayment in substantially equal and consecutive monthly installments of principal and interest combined, the interest may be precomputed according to the schedule quoted above on scheduled unpaid principal balances and each payment received may be applied to the combined total of principal and interest until the loan is fully repaid.

In this case, periodic monthly payments totaling approximately $500.00 were made in accordance with the contract and thereafter, no further payments were made.

Plaintiffs then commenced this action on July 17, 1978. On July 24, 1978, Judge Foley entered a preliminary injunction restraining Beneficial from executing upon its security interest in plaintiffs' automobile or upon a wage assignment contained in the loan contract. Thereafter, the parties cross-moved for summary judgment on two claims asserted by plaintiffs. Judge Foley denied those motions without prejudice to renew on the grounds that the proper characterization of the post-default interest provision is a matter which should be submitted in the first instance to the Federal Reserve Board ("FRB"), the agency charged with overseeing enforcement of the TILA. Accordingly, Judge Foley directed the parties to secure an Official Staff Interpretation by the FRB concerning the nature and effect of the disputed post-default interest provision. *Enright v. Beneficial Finance Co. of New York*, No. 78–CV–351, slip op. at 5 (N.D.N.Y. June 26, 1980).

In response to Judge Foley's suggestion, the parties sought a formal response from the FRB. Unfortunately, the FRB staff's response does not directly address the issue posed in this case. Rather, as will be discussed below, the response consists of two unofficial staff responses that were issued to other inquirers some years ago. This matter is now before the Court on the parties' renewed cross-motions for summary judgment. Since it appears that FRB is not inclined to render any further enlightenment in this area, the Court will now treat these motions.

## II. DISCUSSION

The TILA, 15 U.S.C. §§ 1638(a)(9), 1639(a)(7) and Regulation Z, 12 C.F.R. § 226.8(b)(4) require lenders to disclose "(t)he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments." It is now settled that an acceleration clause is not a default or similar charge subject to disclosure under § 226.-8(b)(4). *Ford Motor Credit Company v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). In reaching this result, the *Milhollin* Court reasoned that "default, delinquency or similar charges" means a specific penalty sum designed and understood in the trade to be " 'the *compensation* a creditor receives on a precomputed contract for the debtor's delay in making timely installment payments,' 1 CCH Consumer Credit Guide ¶¶ 4230, 4231; Uniform Con-

sumer Credit Code of 1968, § 2.203, official comment 2, 7 U.L.A. 315–316 (1978); § 2.204(3), 7 U.L.A. 317 (1978)." *Id.* at 561, 100 S.Ct. at 795. (emphasis by the Court). In contrast, "(a)cceleration is not compensatory; a creditor accelerates to avoid further delay by demanding immediate payment of the outstanding debt." *Id.*

While the disclosure statement in this case provided for a predetermined default charge of $0.87 for a temporary delay of a particular installment, plaintiffs contend that the contractual provision for post-maturity interest at "the agreed rate of interest" constitutes an additional late payment charge which must be disclosed in accordance with Regulation Z, § 226.8(b)(4). Plaintiffs further argue that because the TILA disclosure document in this case does not conspicuously disclose either the amount or the method of computing the amount of this post-maturity interest, Beneficial is liable for statutory penalties under TILA.

In support of their contention that the post-maturity interest provision constitutes a default or similar charge, plaintiffs have relied upon two separate theories. At the hearing on the first summary judgment motion, plaintiffs argued that the provision for post-maturity interest at the agreed rate of interest constituted a late payment charge because the agreed rate exceeded the 6% rate established by New York law for computing interest on judgments. While there is some language to support this view in the district court's decision in *Smith v. Chapman*, 436 F.Supp. 58, 63 (W.D.Tex.1977), *aff'd*, 614 F.2d 968 (5th Cir. 1980), the Fifth Circuit has recently construed its affirmance in *Smith* to have held only that where post-maturity interest was specifically treated as a delinquency charge on the lender's disclosure statement, the disclosure that post-maturity interest would not exceed the "highest lawful contract rate," was not sufficiently clear and definite and therefore did not satisfy the requirements of Regulation Z. *Whitfield v. Termplan, Inc.*, 651 F.2d 383, 385 n.2 (5th Cir. 1981). In *Whitfield*, the district court held that because the contract provided for interest on the unpaid balance after the scheduled or accel-

erated maturity at 8%, while the statutory rate under Georgia law would have been only 7%, the contract imposed a 1% charge that must be disclosed under Regulation Z. The Fifth Circuit reversed on this issue. Relying on the Supreme Court's definition of a default charge in *Milhollin* as well as the FRB Official Staff Interpretation No. FC–0083 (June 20, 1977), the Fifth Circuit in *Whitfield* concluded that so long as the interest rate did not increase during the post-maturity period, it did not constitute a penalty or compensation for delay:

> Indeed, we believe it would be unreasonable to penalize the lender for failing to disclose the fact that he would charge the same interest rate for the use of his money after maturity as he did during the life of the loan. We hold that a lender is not required to disclose the fact that post-maturity interest will be charged where the rate is the same as the stated contract rate of interest.

*Whitfield, supra*, 651 F.2d at 385 (footnote omitted). Other courts have reached similar conclusions. *See, e.g., Dixey v. Idaho First National Bank*, 505 F.Supp. 846, 851–52 (D.Idaho); *Lipson v. Burlington Savings Bank*, 428 F.Supp. 1073 (D.Vt.1977); *Fisher v. Beneficial Finance Co. of Hoxsie*, 383 F.Supp. 895, 898–99 (D.R.I.1974); *cf. Franklin v. Community Federal Savings & Loan Ass'n*, 629 F.2d 514 (8th Cir. 1980) (where the interest rate during period of delinquency increased from 9½% to 10%, the higher interest rate constitutes a default, delinquency or similar charge subject to disclosure under Regulation Z). While this Court finds persuasive the Fifth Circuit's reasoning in *Whitfield*, it appears that plaintiffs have now abandoned their initial theory that any post-maturity interest rate that exceeds the statutory rate is invariably subject to disclosure as a default charge. We turn then to the argument advanced on the renewed motion for summary judgment.

■ Plaintiffs now argue that the provision for post-maturity interest, while equivalent to the periodic rate schedule applied during the life of the loan, nevertheless

constitutes a default charge because this was a precomputed rather than a simple interest loan. This argument rests entirely on a series of official and unofficial opinions of the FRB staff. As plaintiffs correctly point out, official staff interpretations are entitled to substantial deference under the TILA scheme. *Milhollin, supra,* 444 U.S. at 567–568, 100 S.Ct. at 797–98. Unofficial interpretations, on the other hand, may properly be accorded somewhat less deference, since Congress has not accorded them any special status. *Id.* at 566–67 and nn. 9 & 10, 100 S.Ct. at 797–98 and nn. 9 & 10.

The only official FRB position concerning the issue of post-maturity interest rates is set forth in FRB Official Staff Interpretation No. FC–0083 (June 20, 1977). There, the FRB staff ruled that the accrual of simple interest on the unpaid balance of a simple interest loan after either the date an installment payment is due or after the maturity date of the loan contract, need not be disclosed as a default or similar charge under Regulation Z if the interest rate is "the same as the rate stated in the loan contract." *Id.* In reaching this conclusion, the staff acknowledged that with respect to a simple interest loan, the TILA mandated disclosures of the Finance Charge and the Annual Percentage Rate ("APR") are computed in advance on the basis of an assumption that the borrower will make timely periodic installment payments; the actual finance charge, however, "will vary from that initially disclosed if payments are received on other than the scheduled dates." *Id.* This variance from the initially-disclosed Finance Charge results from the fact that the actual interest component of the finance charge is computed by applying a periodic rate to the unpaid principal balance for the actual period that the balance has been outstanding.

This Official Staff Interpretation, then, fully supports the results reached in the cases discussed earlier, at least to the extent that the loans under review were sim-

ple interest loans.[2] For the proposition that post-maturity interest constitutes a default charge in the context of a precomputed interest loan, plaintiffs rely on FRB public information letter 1165 (unofficial staff interpretation, March 17, 1977) and on two unofficial staff interpretations that were received in response to this Court's request for an Official Staff Interpretation on the precise issue now before the Court. Read together, these interpretive documents advance the view that a statutory interest charge that is assessed on the unpaid balance of a precomputed interest loan after scheduled or accelerated maturity is a default charge subject to disclosure under § 226.8(b)(4). Public Information Letter 1165; Unofficial Staff Interpretation Letter, October 20, 1978 (Robert Plows, Section Chief); Unofficial Staff Interpretation Letter, July 28, 1978, (Robert Plows, Section Chief). Since each of these letters explicitly acknowledges that the FRB staff has officially adopted the opposite position with respect to simple interest loans (so long as post-maturity interest does not exceed the rate assessed prior to default), it would appear that with respect to precomputed interest loans, the staff viewed the assessment of statutory interest after maturity as a default charge even in cases where the statutory rate was less than the periodic rate assessed during the life of the loan.

Letter 1165 involved a precomputed interest loan that was in default. Under applicable state law, a seven percent simple interest charge could be assessed on such accounts, and the lending institution posed the question whether the statutory interest charge was subject to any TILA disclosure requirement. The staff determined that while the imposition of statutory interest was not a finance charge, it nevertheless constituted a late payment charge because it is levied as a result of unanticipated delinquency.

It should be noted that letter 1165 was issued before Official Staff Interpretation

---

**2.** The opinions in those cases do not explicitly identify the loans as simple interest, as opposed to precomputed interest loans.

No. FC–0083, which, as noted above, focused on whether the post-maturity interest exceeded that charged under the contract during the life of the loan. Moreover, the staff's rationale for characterizing post-maturity, statutory interest as a default charge with respect to precomputed interest loans—because it is levied as a result of unanticipated delinquency—seems to apply with equal force in the case of a simple interest loan. Yet, with regard to simple interest loans, FC–0083 concludes that the assessment of statutory interest following default is not a default charge so long as the statutory rates does not exceed the contract rate.

On July 28, 1978, in response to a letter requesting a reconsideration of Letter 1165, the staff responded with an unofficial interpretation which reaffirmed the position taken in the earlier letter but advanced a different rationale. The lending institution argued that post-maturity assessment of statutory interest should be treated as interest imposed for the use of the outstanding balance rather than as a default charge, and that in this respect, precomputed interest loans should be treated in the same fashion as simple interest loans. The staff rejected this argument, reasoning that the conclusion in FC–0083 "was based upon the fact that *inherent in the concept* of a simple interest installment loan is the principle that interest is to be calculated and charged on a daily basis on the unpaid balance of the loan." Unofficial Staff Interpretation Letter (Robert Plows, Section Chief, July 28, 1978) (emphasis added). The staff reasoned that precomputed loans should be treated differently for disclosure purposes because, "(u)nlike the simple interest loan, the precomputed interest loan does not involve the daily accrual of interest on the unpaid loan balance." *Id.*

Also included in the FRB's response to this Court's inquiry was a second unofficial interpretation letter issued on October 20, 1978 in response to a second request that Letter 1165 be reconsidered. In this letter, the staff simply reiterated its earlier view that because "the continued accrual of interest on the unpaid balance is not an *inher-*

*ent term* of the [precomputed interest] loan, statutory interest imposed on precomputed interest loans is, in the staff's opinion, a default charge within the meaning of §§ 226.4(c) and 226.8(b)(4)." Unofficial Staff Interpretation Letter, October 20, 1978 (emphasis added).

In this case, Beneficial argues that the FRB staff position discussed above should be disregarded because those unofficial interpretations dealt only with the post-maturity assessment of statutory interest and did not directly address the question of post-maturity interest at the contract rate in a precomputed loan situation. This argument is wide of the mark; the FRB's treatment of the post-maturity interest rests on whether or not the loan agreement manifests (as an "inherent concept") the principle that interest continuously accrues on the unpaid balance. Since Beneficial concedes that its loan to the Enrights was a precomputed interest loan, it would follow under the FRB staff's view that the provision for post-maturity interest at the agreed monthly rate was a default charge subject to disclosure under Regulation Z.

In *Milhollin*, the Supreme Court announced the following guidelines for judicial resolution of TILA claims: "Thus, while not abdicating their ultimate judicial responsibility to determine the law, *cf.* generally, *SEC v. Chenery Corp.*, 318 U.S. 80, 92–94, 63 S.Ct. 454, 461–62, 87 L.Ed. 626 (1943), judges ought to refrain from substituting their own interstitial lawmaking for that of the Federal Reserve, so long as the latter's lawmaking is not irrational." *Id.*, 444 U.S. at 568, 100 S.Ct. at 798. This Court has made every effort to adhere to these guidelines by soliciting and carefully considering the views of the FRB staff. Whether or not the unofficial interpretations issued by the FRB staff are entitled to the same degree of judicial deference that Congress and the Supreme Court have reserved for official interpretations, this Court is not persuaded that the staff's disparate treatment of precomputed and simple interest loans can withstand even minimal scrutiny.

The Truth in Lending Act is designed to promote "the informed use of credit" by requiring "meaningful disclosure of credit terms" to consumers. 15 U.S.C. § 1601. Regardless of whether a loan involves the assessment of simple interest or precomputed interest, the TILA disclosure statement requires the lender to disclose both the Finance Charge and the Annual Percentage Rate. As FRB Official Staff Interpretation No. FC–0083 acknowledged, however, the computation of these two mandated disclosures in a simple interest loan requires the use of an assumption that the principal will be paid in periodic installments, and is an accurate reflection of the actual cost of credit only if the borrower makes payments in accordance with the assumed schedule. Thus, under the dichotomy erected by the FRB staff, the face of a TILA disclosure statement for either type of loan may contain an APR figure based on an essentially precomputed application of a periodic interest rate to a scheduled repayment period, and both may have omitted a disclosure concerning the assessment of post-maturity interest, yet only one (the simple interest loan) will pass muster.

For the FRB staff to erect a distinction for TILA disclosure purposes based solely on what it asserts to be an "inherent" feature of a particular financing arrangement seems, in this Court's opinion, to fly in the face of the Congressional scheme and exceeds the bounds of reasonable interstitial lawmaking. Even accepting the premise that continued accrual of interest on the unpaid balance distinguishes a simple interest loan from a precomputed interest loan, that difference is simply irrelevant in the post-maturity period. Once the loan has gone into default and the right to accelerate the outstanding balance has been exercised, the unpaid balance is immediately due and owing to the lender. Whatever concepts inhered in the loans during the repayment period are of no force once that period expires through scheduled or accelerated maturity.

Moreover, the unofficial staff interpretations concerning post-maturity interest on a precomputed interest loan were issued prior to the Supreme Court's discussion of default charges in *Milhollin*. There, the Court emphasized that the default or similar charges addressed by § 226.8(b)(4) are specific penalty sums. 444 U.S. at 561, 100 S.Ct. at 795. The assessment of post-maturity interest at the same rate as that stated in the contract cannot be viewed as the equivalent of a delinquency charge defined as "the *compensation* a creditor receives on a precomputed contract for the debtor's delay in making timely installment payments." *Id.* at 561, 100 S.Ct. at 795, quoting 1 CCH Consumer Credit Guide ¶¶ 4230, 4231 (1977) (emphasis by the Court). Given the Supreme Court's view that a default charge involves the lender's receipt of a sum in addition to that otherwise earned, this Court believes that the post-maturity interest provision included in the contract in this case was not a required disclosure under the TILA or Regulation Z. In this regard, the Fifth Circuit's reasoning bears repeating:

> Indeed, we believe it would be unreasonable to penalize the lender for failing to disclose the fact that he would charge the same interest rate for the use of his money after maturity as he did during the life of the loan. We hold that the lender is not required to disclose the fact that post-maturity interest will be charged where the rate is the same as the stated contract rate of interest.

*Whitfield, supra,* 651 F.2d at 385 (footnote omitted). Finally, this Court notes that under the Truth in Lending Simplification and Reform Act (Title VI of the Depository Institutions Deregulation and Monetary Control Act of 1980), Pub.L. 96–221, the assessment of post-maturity interest with respect to either a simple interest or a precomputed interest loan is not a mandated disclosure. On April 1, 1981, the FRB promulgated a revised Regulation Z that reflects this statutory change. *See* 46 F.R. 20902–20903 (April 7, 1981).

■ In sum, this Court holds that because the post-maturity interest rate in this loan was the same as that agreed to by the parties in the contract, the provision for

post-maturity interest is not a default charge and Beneficial was not required to disclose it under Regulation Z. Having determined that post-maturity interest was not subject to disclosure under Regulation Z, this Court has no occasion to decide whether Beneficial's disclosure of this information within the paragraph entitled "ACCELERATION" meets the "clear and conspicuous" requirements that apply to mandated disclosures under 12 C.F.R. § 226.6(a).

Finally, the parties have cross-moved for summary judgment on plaintiffs' claim that Beneficial's disclosure concerning post-maturity interest constitutes "additional information" which violates Regulation Z, 12 C.F.R. § 226.6(c) because it is stated in a manner likely to confuse or mislead the borrower. Section 226.6(c) provides in pertinent part:

> (c) *Additional Information.* At the creditor's or lessor's option, additional information or explanations may be supplied with any disclosure required by this part, but none shall be stated, utilized, or placed so as to mislead or confuse the customer or lessee or contradict, obscure or detract attention from the information required by this part to be disclosed. . . .

While each party filed Rule 10(e) statements (Local Rule 10(e)) purporting to inform the Court of the material facts as to which there exists no genuine dispute, neither of the statements addresses this last issue. Summary judgment, of course, is limited to cases in which there are no disputed issues of material facts, and only legal issues need to be decided. The threshold question then, is whether the determination required by 12 C.F.R. § 226.6(c) involves an issue of fact that must await trial on the merits, or whether the tendency of the post-maturity interest clause to confuse or mislead the borrower is a matter for the court to decide.

The line between what is "law" and what is "fact", is often blurred; moreover, commentators who devote considerable time to such questions do not even agree concerning the best approach to the question. *Compare* K. Davis, *Administrative Law Treatise* §§ 30.01, 30.04 (1958) (in administrative law context, Professor Davis' practical approach looks to which decision-maker—court or agency—would be best able or which should (as a normative policy matter) decide a question) *with* L. Jaffee, *Judicial Control of Administrative Action* 546–49 (1965) (analytic approach which starts with a definition of facts to reach its conclusions). In this case, the basic facts concerning the placement and language of the post-maturity interest clause are evident from the documents themselves and are not in dispute. The parties, however, are in complete disagreement concerning the tendency of this additional information to confuse or mislead the borrower. Despite ample opportunity to do so, neither party has proffered any criteria by which to gauge this likelihood of confusion element, nor has either party given the Court any indication that there exists other competent evidence, apart from the documents themselves, that would assist in resolving this issue. Accordingly, the Court will treat this as a question of law to be determined by a summary judgment. We turn then to the arguments advanced by the parties.

The post-maturity interest clause appears at the end of the fourth separately labeled paragraph of explanatory text on the TILA disclosure statement. These paragraphs, in turn, are separated from the numerical disclosures by a heavy black line. In support of the claim that the post-maturity interest clause violates Regulation Z, plaintiffs argue that because the phrase "agreed rate of interest" is not defined elsewhere on the face of the TILA disclosure statement: "the borrower's natural inclination would be to search the face of the disclosure document for a conspicuous disclosure of the applicable interest rate figure. Doing so, he or she would quickly find '18.06% ANNUAL PERCENTAGE RATE,' the only interest rate figure to be found on the face of the disclosure statement." Plaintiffs' Brief in Support of Summary Judgment at 8. Since the Annual Percentage Rate is not the "agreed rate of interest," the argument continues, the disclosure of the latter term is likely to confuse and mislead a consumer

who, in the Supreme Court's words, remains "remarkably ignorant of the nature of their credit obligations and the costs of deferring payment." *Mourning v. Family Publications Service*, 411 U.S. 356, 363, 93 S.Ct. 1652, 1657, 36 L.Ed.2d 318 (1973).

 This argument, which rests ultimately on nothing more substantial than sheer speculation concerning human behavior,[3] falls far short of establishing that Beneficial's post-maturity interest clause was, as a matter of law, disclosed in a manner likely to confuse or mislead the average borrower. First and foremost, plaintiffs' hypothesis is sufficiently rebutted by the fact that the "agreed rate of interest" is carefully and prominently defined both at the top of the promissory note executed by plaintiffs and on the reverse side of the disclosure document in compliance with New York State law. Second, it is far from clear that a more complete recitation of the "agreed rate of interest" within the paragraph entitled "ACCELERATION" would have assisted plaintiffs' hypothetical borrower, for in that case it could be argued that the borrower would be confused as to which of the two percentages applied. Moreover, as Beneficial notes, the Annual Percentage Rate is not, under the TILA, a true interest rate, but rather reflects the annual percentage rate of the Finance Charge which includes items besides interest. Finally, the paragraph in which the post-maturity interest clause appears is separated from the numerical disclosures, including the Annual Percentage Rate, by a heavy, black line. Beneficial explains that this paragraph entitled "ACCELERATION" was separately disclosed because at the time this loan was made, the Supreme Court had yet to resolve the split among the Circuit Courts concerning the disclosure of acceleration clauses generally. In sum, there is no violation of Regulation Z, 12 C.F.R. § 226.6(c) in this case.

## III. CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for summary judgment is de-

nied in its entirety, and judgment is granted in favor of the defendant. In accordance with Rule 58 of the Federal Rules of Civil Procedure, a judgment reflecting these conclusions shall be entered.

IT IS SO ORDERED.

---

3. There is no suggestion in this record that plaintiffs' were in fact misled in this regard.