Monica **BURY**, Plaintiff-Appellant,

v.

**MARIETTA DODGE,**
Defendant-Appellee.

No. 82–8282

**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 6, 1982.

Rehearing and Rehearing En Banc
Denied Feb. 28, 1983.

Ralph Goldberg, Atlanta, Ga., for plaintiff-appellant.

Greene, Buckley, DeRieux & Jones, Gregory J. Digel, Atlanta, Ga., for defendant-appellee.

Appeal from the United States District Court for the Northern District of Georgia.

Before TJOFLAT, JOHNSON and HATCHETT, Circuit Judges.

PER CURIAM:

In this Truth in Lending Act case, we must determine what weight is to be given unofficial opinions of Federal Reserve Board staff members. Following precedent, we affirm the trial court's ruling that controlling weight is not to be given to these unofficial opinions.

## FACTS

Appellant, Monica Bury, entered into a consumer credit transaction with appellee, Marietta Dodge (Dodge), an automobile dealership. In August, 1980, Bury began a civil action against Dodge in the district court, alleging that her consumer contract with Dodge was violative of the Truth in Lending Act. She alleged that Dodge had not made the credit disclosures required by the statute. Title 12 C.F.R. § 226.8(b)(4) requires that a lender advise the borrower in a consumer credit transaction of any default or delinquency charge.* In the con-

---

* Title 12 C.F.R. § 226.8(b)(4) provides, in pertinent part:

    (b) Disclosures in sale and nonsale credit. In any transaction subject to this section, the following items, as applicable, shall be disclosed:

    . . . .

tract, the annual percentage rate revealed to the borrower on the face of the contract is 14.35%. Bury contends that on the reverse side of the contract the lender is given the right to recover on any deficiency at the highest lawful contract rate, which in Georgia means that the lender may recover simple interest at the rate of 10.5% on any deficient amount. The contract does not specify on its face that the highest lawful contract rate in Georgia is 10.5%.

Bury and Dodge moved for summary judgment. The magistrate recommended that Dodge's motion for summary judgment be granted. Applying a Fifth Circuit case, the magistrate found that post-maturity interest is not a default or delinquency charge if the rate of interest is equal to or less than the interest rate of the loan itself. *Whitfield v. Termplan, Inc.,* 651 F.2d 383, 385 (5th Cir.1981). In this case, the highest lawful contract rate for the post-maturity interest, 10.5%, is below the annual contract percentage rate of 14.35%. Therefore, according to *Whitfield,* the post-maturity rate in this instance was not a default charge which need be disclosed under the regulations. The district court approved the recommendation of the magistrate.

Bury moved to alter or amend the judgment of the district court, attaching to her motion two informal letters by staff attorneys of the Federal Reserve Board. The staff attorneys in the unnumbered and unpublished letters take the position that an undisclosed provision allowing for the collection of interest after maturity is a default delinquency or similar charge payable in the event of late payment, and must be disclosed under 12 C.F.R. § 226.8(b)(4). Bury argues that these unofficial letters are controlling upon the court. The district court disagreed, stating that unofficial, unpublished letters of staff attorneys on the Federal Reserve Board may not be given controlling weight simply because they are opinions of staff attorneys on the Board.

Bury argues on appeal that *Whitfield v. Termplan,* which held that undisclosed post-maturity interest rates did not violate the Truth in Lending Act where the rate was the same, or less, than the interest rate of the loan itself, should be overruled in light of subsequent case law. Bury contends that subsequent case law mandates that the Eleventh Circuit follow the opinions of the Federal Reserve Board, however expressed, unless "demonstrably irrational."

It is the contention of Bury that the two unofficial, unpublished staff attorney letters constitute valid opinions of the Federal Reserve Board which must be followed as they are not demonstrably irrational.

Dodge disagrees, and urges that it was not required to disclose on the face of the consumer contract its right to post-maturity interest where the rate of post-maturity interest is equal to or lower than the annual percentage rate of the consumer contract. Further, Dodge contends that the two unnumbered, unofficial, and unpublished Federal Reserve Board staff letters relied upon by Bury were not properly before the district court and were not properly admitted into the record on appeal and that there has been no authentication of the letters pursuant to Federal Rules of Evidence 901 and 902.

The issues we are called upon to decide are: (1) whether the two letters of the Federal Reserve Board have been entered into the record and therefore are properly before the court, and, (2) whether the two unofficial Federal Reserve Board letters which urge that post-maturity interest rates are to be considered default payments for purposes of disclosure under the Truth in Lending Act are to be given controlling weight by this court.

## DISCUSSION

■ The Federal Rules of Evidence require that evidence presented to the court be authenticated. Federal Rule of Evidence 901(a) provides:

General provision. The requirement of authentication or identification as a condition precedent to admissibility is satis-

---

(4) The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.

fied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

In this case, the copies of the two letters by staff attorneys have been initialed by Margaret Stewart, senior attorney of the regulations division of the Division of Consumer and Community Affairs at the Federal Reserve Board. Stewart has also affixed a certified affidavit to the letters attesting that they are true and accurate copies of letters sent by Federal Reserve Board attorneys on October 20, 1978, and July 28, 1978, to two different individuals, neither of them a party to this litigation. Additionally, counsel for Bury has also affixed to his motion to alter judgment, a certified affidavit attesting that these letters have been presented to him as true and correct copies of actual Federal Reserve Board letters.

Federal Rule of Evidence 901 does not specify how a piece of evidence may be authenticated. Although section 901(b) illustrates various methods of authentication, these methods are not intended to be the only methods of authentication. Section 901(a) specifies only that the requirement of authentication is satisfied when there is evidence sufficient to support a finding that the matter is what the proponent claims it is. Here, the Federal Reserve Board sent copies of the letters to counsel for Bury. The Federal Reserve Board, through senior attorney Margaret Stewart, certified and attested that these letters are true and correct copies of actual letters sent by the Federal Reserve Board to other individuals. Additionally, counsel for Bury attests that these have been represented to him as true and correct copies. These appear to be reasonable methods of authentication, such that would reasonably attest that the two letters are what they purport to be.

Moreover, it is well to consider that admissibility of demonstrative evidence is largely within the discretion of the trial court. A determination of whether an article has been properly identified is an exercise of discretion which will not be disturbed unless there is no competent evidence in the record to support it. *Meadows and Walker Drilling Co. v. Phillips Petrole-*

*um Co.,* 417 F.2d 378, 382 (5th Cir.1969). The trial court accepted the two letters as being true and correct copies of actual Federal Reserve Board staff letters. In doing so, the trial court properly exercised its discretion in the matter. We hold that the appended Federal Reserve Board letters are properly admitted into the record and are properly before this court.

We now turn to the question of whether *Whitfield v. Termplan* has been overruled.

The Truth in Lending Act requires that any undisclosed provision allowing for the collection of interest after maturity is a "default delinquency or similar charge payable in the event of late payment." 12 C.F.R. § 226.8(b)(4). In the recent Truth in Lending Act case, *Whitfield v. Termplan,* the Fifth Circuit, applying section 226.-8(b)(4), held that post-maturity interest at a rate equal to or less than the annual percentage rate is not a penalty. As support for this contention, the Fifth Circuit quoted from Federal Reserve Board Official Staff Interpretation Number FC–0083, printed in the Consumer Credit Guide, which states:

> You also ask whether a creditor must disclose that, after the maturity date of a simple interest loan contract, interest may or will accrue on any principal balance that remains unpaid.
>
> It is the staff's opinion that as to simple interest loans, *such continued accrual of interest need not be disclosed if the periodic rate applicable after maturity is the same as the stated periodic rate under the loan contract,* or if the rate permitted by statute after the loan maturity rate is lower than the stated rate. Where the interest on the unpaid balance accrues at a higher rate after the maturity date, however, staff believes disclosure is required by § 226.8(b)(4).

*Whitfield,* 651 F.2d at 384 (emphasis in original).

The Supreme Court has stated that "unless demonstrably irrational, Federal Reserve Staff opinions construing the [Truth in Lending] Act or regulation should be dispositive." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 797,

63 L.Ed.2d 22 (1980). The Federal Reserve staff opinions upon which the Supreme Court relied in *Milhollin* were official staff opinions by the Federal Reserve Board, published in the Federal Register. *Milhollin,* 444 U.S. at 562, 100 S.Ct. at 795.

■ In *Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783, the Supreme Court again interpreted the Truth in Lending Act, looking to the Federal Reserve Board's interpretation of section 226.8(b)(5). The Supreme Court, however, is insistent that Official Staff Interpretation FC–0173, which interpreted section 226.8(b)(5), should have "official" status, and the sanction of the Board. The Court notes that FC–1073 has not received final approval by the Board, and, accordingly, then notes that the Court need not "rest on FC–0173 for the Board's construction of the statute or of [section 226.8(b)(5)] with respect to the scope of the ... disclosure requirement." *Valencia,* 452 U.S. at 213, 101 S.Ct. at 2271. The Supreme Court then resolves the case by analyzing section 226.-8(b)(5) in light of recent amendments to the Truth in Lending Act, rather than resolving the case by basing its decision upon the interpretation of the Board. These actions strongly suggest that the Supreme Court only intends official interpretations of the Federal Reserve Board to be given weight by the courts, i.e., interpretations which are recognized by the Board as an entity, and which represent the entire Board's interpretation of the statute.

Taking note of the Supreme Court's decisions, the Fifth Circuit relied upon an official, numbered, Federal Reserve Board letter by assistant director Jerauld C. Kluckman, as the basis upon which it then went on to overrule its previous interpretation of the Truth in Lending Act. *Smathers v. Fulton Federal Savings & Loan Association,* 653 F.2d 977 (5th Cir.1981). The letter by Kluckman interpreted that section of the Act, and the Fifth Circuit, finding no demonstrable irrationality, applied the Federal Reserve Board's letter as controlling.

■ Bury argues that in light of *Smathers,* this court should now give precedential value to all staff interpretations by members of the Federal Reserve Board. We do not agree. *Smathers* is easily distinguishable from the case at hand. In *Smathers,* the court relied upon a published, numbered letter by the assistant director of the Federal Reserve Board. Kluckman issued the letter in his official capacity as the assistant director of the Board. It is reasonable to assume that the letter therefore has the status of an official staff interpretation, especially as it is published and numbered by the Federal Reserve Board. In this case, we are dealing with an unnumbered, unpublished letter by a staff attorney. There is nothing to indicate that the Federal Reserve Board as a body approves of the interpretation of the regulation as expressed in the letter, or even knows of the interpretation as expressed in the letter. Although the two letters were approved by section chiefs, we cannot assume that approval by a section chief is to be given the same weight as that of the assistant director of the entire Federal Reserve Board.

Bury is correct in stating that if we give the two letters of the staff attorneys the same weight as official staff interpretations of the Federal Reserve Board, these Board letters would have the effect of overruling *Whitfield v. Termplan.* We cannot allow this result, because it would then follow that any attorney of the Federal Reserve Board could write a letter indicating his own private interpretation of a regulation or statutory provision, indicate in the letter that he feels his interpretation to be indicative of the Federal Reserve Board's interpretation of the statute, and thereby, automatically reverse any court's decision which holds otherwise. If we follow Bury's reasoning, a court can be controlled by staff interpretations which need not be published. A staff attorney could write a letter, keep it in his desk, and yet produce a letter which would control each court in the nation. We cannot believe that this is the result which the Supreme Court intended.

As the Supreme Court said in *Milhollin,* the opinions of members of the Federal Reserve Board should be given considerable weight unless they are "demonstrably irrational." *Milhollin,* 444 U.S. at 565, 100 S.Ct.

at 797. To give controlling weight to a staff letter by an attorney on the Federal Reserve Board, writing to anyone in the country as to his interpretation of statutory construction, would produce a demonstrably irrational result, and is therefore not the path which we choose to follow. We believe that the Supreme Court has dictated that we follow official staff interpretations of the Federal Reserve Board, and we do not believe the two letters appended to Bury's motion to alter judgment to be official staff interpretations.

### CONCLUSION

Accordingly, for the reasons herewith, we hold (1) that the letters are properly before the court on record and, (2) that despite the fact that the letters are officially before the court on record, they are not of controlling precedential value. We affirm the decision of the district court dismissing Bury's motion to alter judgment.

AFFIRMED.